IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

CHOICE EXPLORATION, INC., §
PETRODOME LIBERTY, LLC, AND §
PETRODOME ENERGY, LLC, §
 *Plaintiffs,* §
  §
v. §    CIVIL ACTION NO. 1:21-CV-00609
  §    JUDGE MICHAEL J. TRUNCALE
GEMINI INSURANCE CO., §
 *Defendant.* §
  §
  §

CONSOLIDATED
WITH

GEMINI INSURANCE COMPANY, §
 *Plaintiff,* §
  §
  §    CIVIL ACTION NO. 1:21-CV-00205
v. §    JUDGE MICHAEL J. TRUNCALE
  §
CHOICE EXPLORATION, INC., §
 *Defendant.* §

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART GEMINI'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

  Before the Court is Gemini Insurance Company's Second Motion for Partial Summary

Judgment [Dkt. 57]. For the reasons discussed below, the Court grants Gemini's Motion in part,

and denies it in part.[1]

### I.  BACKGROUND

  In 2015, Gemini Insurance Company issued two practically identical insurance policies

covering a Liberty County oil well (the "Well"). *See* [Dkts. 57–1 (Petrodome Policy); 57-3 (Choice

---

[1] Gemini's Second Motion for Partial Summary Judgment, [Dkt. 57], only challenges the claims brought by Choice, not the claims brought by Petrodome Liberty and Petrodome Energy. Accordingly, this Order should not be construed as ruling on any of the Petrodome parties' claims.

Policy)]. It issued one of the policies (the "Choice Policy" or the "Policy"), covering a 73.33% interest of the Well, to Choice Exploration, Inc. [Dkt. 57 at 10]. Gemini issued the other policy (the "Petrodome Policy") to Petrodome Energy, LLC. *Id.* The Petrodome Policy covers the 26.67% working interest in the Well held by Petrodome Energy's wholly owned subsidiary, Petrodome Liberty, LLC.

If the Well gets "out of control," Section IA of the policies covers costs to regain control of the Well, [Dkts. 57-1 at 25–27; 57-3 at 57–59], and Section IB covers costs to remediate the Well. [Dkts. 57-1 at 28–29; 57-3 at 60–61]. In either event, coverage is provided on a reimbursement basis. Under Section IA, the policies obligate Gemini "to reimburse [Petrodome or Choice] for actual costs and/or expenses incurred . . . in regaining or attempting to regain control of any and all Wells Insured which get out of control." [Dkts. 57-1 at 25; 57-3 at 57]. Likewise, Section IB obligates Gemini "to reimburse [Petrodome or Choice] for actual costs and/or expenses *reasonably* incurred to restore or redrill a Well, or any part thereof, which has been lost or otherwise damaged as a result of . . . an Occurrence giving rise to a claim which would be recoverable under Section IA." [Dkts. 57-1 at 28; 57-3 at 60] (emphasis added).

In May 2015, the Well stopped producing due to an obstruction. [Dkt. 57 at 9]. Choice planned a workover to clear the obstruction; repair a potential leak; test and cement squeeze the casing (if needed); re-run the chrome tubing; and return the Well to production. *Id.* This did not go according to plan. On September 12, 2015, a crossflow—"[t]he flow of reservoir fluids from one zone of the well to another"—began (the "Occurrence"). *Id.* at 8–9; *Crossflow*, Energy Glossary, https://glossary.slb.com/en/terms/c/crossflow (last visited May 1, 2023). Choice regained control of the Well on September 19, 2015. [Dkt. 57 at 9]. The parties do not dispute that

the Occurrence is within the policies' scope. Nonetheless, these events in 2015 sparked years of litigation between Gemini, Choice, and Petrodome, in both Dallas and Beaumont.

Petrodome Energy filed a claim under the Petrodome Policy on October 15, 2015, seeking reimbursement for Section IA Expenses. [Dkt. 32 at 7]. It executed a proof of loss on May 17, 2018, for $51,378.89, which Gemini paid. *Id.*; [Dkts. 32-2; 36-5]. Gemini also reimbursed Choice $106,984.26 for costs to bring the Well under control. *Id.*; [Dkts. 32-10; 36-4]. Effective January 1, 2018, Petrodome Liberty assigned its 26.67% interest in the Well—along with its "claims or settlements" under the Petrodome Policy—to CHX, a Choice subsidiary (the "Assignment"). [2] [Dkts. 32 at 10, 32-9 at 2].

In 2018, Gemini filed suit against Choice in the Northern District of Texas ("*Gemini I*"). In relevant part, Gemini sought declaratory judgment that, under Section IB of the Policy, its "obligation is limited to reimbursement of restoration of the Well through a workover, not a redrill." Original Complaint, *Gemini Ins. Co. v. Choice Expl., Inc.*, No. 3:18-CV-01392-X (N.D. Tex. May 31, 2018) [Dkt. 1 at 6]. The court held that Gemini's claims regarding its obligations under the contract were not ripe because Subsection IB(f) provides:

> The Assured agrees to advise [Gemini] if restoration or redrill has not commenced within 540 days from the date of the accident, cancellation or expiry of this Policy, whichever shall occur last and such restoration or redrill shall be held covered at terms, rates and conditions to be agreed by the Company.

*Gemini Ins. Co. v. Choice Expl., Inc.*, No. 3:18-CV-01392-X, 2020 WL 1064844, at *4–5 (N.D. Tex. Mar. 4, 2020). The court concluded that the Policy therefore "requires the parties to negotiate in good faith new terms for a redrill or restoration that did not commence within 540 days of the

---

[2] Gemini's First Motion for Partial Summary Judgment challenged the validity of the Assignment because the Petrodome Policy contained an Anti-Assignment Provision. This Court held that the Assignment did not trigger the Anti-Assignment Provision, and therefore was valid. [Dkt. 88 at 6]. This is because the Assignment did not assign Petrodome's *policy* to Choice; it only assigned Petrodome's *claims*. *Id.* at 7–8.

occurrence." *Id.* at 5. The court also dismissed Choice's breach of contract and other claims as not ripe, noting:

> It may well be that Gemini breaches its contractual duty to negotiate new terms, but it has not yet done so yet. . . . If Choice believes at some future point that Gemini has breached by failing to negotiate in good faith the reimbursement terms for a redrill or restoration, it may file an appropriate suit at that time.

*Id.*

In April 2021, Gemini filed a second suit for declaratory judgment—this time in the Eastern District of Texas. *Gemini Ins. Co. v. Choice Exploration, Inc.*, No. 1:21-CV-00205 (E.D. Tex. Apr. 28, 2021) (Truncale, J.) ("*Gemini II*"). This time around, Gemini seeks declaratory judgment that:

1. Gemini does not have an obligation to decide what well remediation[3] efforts will be reimbursed under Section IB of the Policy prior to Choice incurring the expenses for reimbursement;

2. Gemini does not have an obligation to pre-approve any method of Well remediation—sidetrack, workover, or redrill—for coverage under Section IB of the Policy;[4] and

3. Alternatively, to the extent that Subsection IB(f) requires Gemini to agree to hypothetical new terms, rates, and conditions not already stated in the Policy, it is unenforceable.

*Id.* at [Dkt. 1 at 5]. Choice and the Petrodome parties subsequently filed a separate suit against Gemini in Dallas County state court for (1) breach of contract; (2) bad faith; and (3) unfair or deceptive insurance practices in violation of Chapter 541 of the Texas Insurance Code. *See* [Dkt. 1-1 at 527–534]. Gemini removed Choice and Petrodome's suit to the Northern District of Texas, landed in the same judge's court as *Gemini I*, and filed a motion to transfer the case to this Court

---

[3] Gemini uses the term "restoration" to encompass both "restoration," as used in the Policy, and redrill. To avoid confusion between "restoration" as Gemini uses it, and "restoration" as used in the Policy, the Court uses the term "remediation" when referring to "restoration or redrill."

[4] The Court ultimately agrees with Gemini that it does not have an obligation to pre-approve any method of Well remediation, but for a different reason than Gemini asserts. The Court holds that Gemini does not have the *authority* to pre-approve any method of Well remediation. *See* discussion *infra* Section III.B.

for consolidation with *Gemini II*. Choice and Petrodome, on the other hand, filed a motion to remand the case to state court. The court granted Gemini's motion to transfer, aptly noting that "[w]hile the parties disagree on pretty much every specific thing, they generally agree that they don't want to be here (again)." *Choice Exploration, Inc. v. Gemini Ins. Co.*, No. 3:21-CV-1519-X, 2021 WL 5999429, at *1 (N.D. Tex. Dec. 17, 2021) (Starr, J.).

This Court subsequently consolidated the transferred case with *Gemini II*, which brings the Court to the present Motion: Gemini seeks summary judgment that: (1) Choice's claim for Section IA expenses under the Petrodome Policy should be dismissed; (2) Gemini does not have an obligation to determine what Well remediation efforts will be reimbursed under Section IB of the Choice Policy prior to Choice incurring the expenses for reimbursement; (3) Gemini does not have an obligation to pre-approve any method of Well remediation—sidetrack, workover, or redrill— described in Section IB of the Choice Policy; (4) Choice's breach of contract claims under Section IB should be dismissed and that Choice's interpretation of Section IB is incorrect; (5) Choice's bad faith claims related to Section IB should be dismissed; and (6) Choice's Texas Insurance Code claims related to Section IB should be dismissed. [Dkt. 57 at 6]. The Court addresses each in turn.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations omitted); Fed R. Civ. P. 56(c). An issue is material if its resolution could affect the outcome of the action. *DIRECTV*, 420 F.3d at 536. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All reasonable inferences must be drawn in favor of the nonmoving party. *Smith v.*

5

*Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002). There is no genuine issue of material fact if, when the evidence is viewed in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (citations omitted). And although courts consider the evidence in the light most favorable to the nonmoving party, "conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986))

"[I]nsurance contracts are subject to the same rules of construction as other contracts." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740–41 (Tex. 1998). Courts "must read all parts of the contract together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Id.* (internal citation omitted).

### III.   DISCUSSION

#### A. Whether Gemini owes Choice for Section IA expenses under the Petrodome Policy depends on fact issues.

This Court previously held: "To the extent that, at the time of the [January 1, 2018] Assignment, Gemini still owed Petrodome under [Section IA of the Petrodome Policy] for costs to bring the Well under control, that claim has been transferred to Choice." [Dkt. 88 at 9]; *see* [Dkt. 32-9 at 3] (providing that the Assignment, Bill of Sale, and Conveyance from Petrodome Liberty, LLC to CHX Acquisition, LLC is executed effective as of January 1, 2018). Gemini asserts that there are no outstanding claims for Section IA expenses that pre-date the January 1, 2018, Assignment. [Dkt. 57 at 18]. Accordingly, Gemini seeks summary judgment that it does not owe Choice for Section IA expenses under the Petrodome Policy. *Id.* In contrast, Choice claims that

there *are* outstanding unpaid claims under Section IA of the Petrodome Policy that pre-date the Assignment. [Dkt. 68 at 22].

The only evidence that Choice originally provided to support its claim was a September 30, 2020, letter from Choice and Petrodome's counsel, Edward Jason Dennis, sent to Andrew Love at Wright Close & Barger, LLP (the firm that represents Gemini), [Dkt. 68-7], and a declaration by Choice's counsel, Jamie Drillette, declaring that this letter is a "true and correct copy of a letter from Lynn Pinker Hurst & Schwegmann on behalf of Choice, dated September" [Dkt. 68-5].

The letter is a demand for reimbursement of expenses under Section IA of the Choice and Petrodome Policies, with three invoices and three receipts attached. [Dkt. 68-7]. The first invoice is for $11,266.25, names Choice as the customer, and is dated August 1, 2017, to February 26, 2018. *Id.* at 4. The second invoice is for $3,247.50, names Costa Energy LLC as the customer, and is dated February 28, 2018, to April 26, 2018. *Id.*at 6. The third invoice is for $6,495.00, names Costa Energy LLC as the customer, and is dated April 28, 2018, to August 31, 2018. *Id.* at 8. The three receipts indicate that the invoices were paid, but do not indicate who paid them. *Id.* at 10.

Out of the three invoices, only the first *may* constitute a Section IA claim under the Petrodome Policy that Petrodome could have transferred to Choice. This is because Petrodome only transferred to Choice the claims that Petrodome had as of January 1, 2018; the other two invoices are entirely for expenses incurred after January 1, 2018. Because Petrodome owned a 26.67% working interest in the Well, presumably, Petrodome was liable for 26.67% of the expenses incurred before January 1, 2018, to get the Well under control. Therefore, this evidence creates a genuine issue of material fact as to whether Petrodome transferred a Section IA claim to Choice for, at most, $3,004.71. But that calculation assumes that the invoice is for expenses

entirely incurred before January 1, 2018. Choice may not recover under the Petrodome Policy to the extent that the invoice is for expenses incurred on or after January 1, 2018.

Gemini objects to this exhibit as inadmissible summary judgment evidence. Specifically, Gemini argues (1) that it is hearsay; (2) that Ms. Drillette, "lacks personal knowledge of the invoices and checks to authenticate these documents"; and (3) that Ms. Drillette's declaration lacks the underlying factual support to show that Petrodome had outstanding Section IA claims prior to the 2018 Assignment. [Dkt. 73 at 2]. In response to Gemini's objection, Choice provided the Court with a sworn declaration from Jon Griffin, Vice President of Choice. *See* [Dkt. 74-1]. Mr. Griffin declares:

> Exhibit G attached to Choice's Response to Gemini's Partial Motion for Summary Judgment is a true and correct copy of a letter Choice's counsel sent on to Gemini behalf of Choice and Petrodome Liberty, LLC and Petrodome Energy, LLC on September 30, 2020. The attachments to this are invoices Choice received from Weatherford and check's written to pay those invoices. They are business records made and kept in the course of Choice's conducted business. They were made at or near the time that the invoices and/or checks were prepared. And it is Choice's regular practice to make and keep such records in the course of its business.

*Id.* at 2–3 (typographical errors in original). The Court is satisfied that Mr. Griffin's declaration resolves Gemini's objection.

Because a genuine issue of material fact exists as to whether Gemini owes Choice for Section IA expenses under the Petrodome Policy, summary judgment on this issue is denied.

## B.  Gemini has an obligation to agree to the terms, rates, and conditions of coverage before Choice redrills or restores the Well.

Subject to the Policy's limit of liability and terms and conditions, Section IB, in relevant part, obligates Gemini to "reimburse [Choice] for actual costs and/or expenses *reasonably incurred* to restore or redrill a Well, or any part thereof, which has been lost or otherwise damaged as a result of . . . an Occurrence giving rise to a claim which would be recoverable under Section IA."

[Dkt. 57-3 at 60] (emphasis added). Section IB coverage is subject to seven "conditions." *Id.* at 60–61.

Subsection (a) provides the first condition: "[Gemini] shall reimburse [Choice] only for such costs and/or expenses as would have been incurred to restore or redrill a Well had the most prudent and economical methods been employed." *Id.*  This envisions a situation where, relatively soon after the Occurrence, Choice proactively redrills or restores the Well and sends Gemini the bill. Under subsection (a), Choice's reimbursement for restoring or redrilling the Well is subject to an *objective* condition: the Policy only covers "the costs and/or expenses" that would have been incurred to restore or redrill the Well "had the most prudent and economical methods been employed." [Dkt. 57-3 at 60]. This is in addition to the general Section IB condition that Gemini must only reimburse Choice for reasonably incurred expenses.

A different condition—found at subsection (f)—applies if Choice does not unilaterally redrill or restore the Well within a specified period:

> [Choice] agrees to advise [Gemini] if restoration or redrill has not commenced within 540 days from date of accident, cancellation or expiry of this Policy, whichever shall occur last **and such restoration or redrill shall be held covered at terms, rates and conditions to be agreed by the Company**.

*Id.* (emphasis added). After the 540-day period has passed, Choice's reimbursement for restoring or redrilling the Well is subject to the "reasonably incurred expenses" condition plus a *subjective* condition: coverage is subject to rates, terms, and conditions that Gemini agrees to. The default condition of what methods are objectively most prudent and economical no longer applies.

A look at the other conditions confirms that subsections (a) and (f) do not apply simultaneously. For example, subsection (d) provides a condition under which "[*i*]*n any circumstances*, the Company's liability under this Section IB for costs and/or expenses shall cease." *Id.* (emphasis added). Had the parties intended that subsection (a) apply "in any

circumstances," they would have included that language, as they did in subsection (d). Likewise, interpreting subsection (a) as applying "in any circumstances" would render subsection (d)'s specification that it applies "in any circumstances" superfluous.

The accident occurred September 12–19, 2015, [Dkt. 57 at 4], the Policy expired April 15, 2016,[5] [Dkt. 57-3 at 2], and restoration or redrill has not commenced to this day. Thus, subsection (f) controls, and the redrill or restoration is covered at "terms, rates and conditions to be agreed by [Gemini]." This leads to the next issue:  What does "such restoration or redrill shall be held covered at terms, rates and conditions to be agreed by [Gemini]" entail?

**1. Gemini must cover a redrill or a restoration—whichever Choice chooses.**

As an initial matter, the Policy requires Gemini to cover a redrill or a restoration. Whichever Choice chooses, Gemini must cover it. Whether subsection (a) or subsection (f) applies, Gemini must cover a redrill if Choice chooses to redrill the Will. Likewise, Gemini must cover a restoration if Choice opts to restore the Well. This conclusion requires first understanding the default condition, subsection (a).

As previously mentioned, under subsection (a), Gemini must only reimburse Choice "for such costs and/or expenses as would have been incurred to restore or redrill a Well had the most prudent and economical *methods* been employed." [Dkt. 57-3 at 60] (emphasis added). The use of plural "methods" indicates that the Policy covers remediations that employ more than one method. Because the policy covers a redrill *or* restoration (i.e., it will not reimburse Choice to both restore and redrill the Well), "methods" cannot refer to "redrill or restoration." Instead, "methods" must refer to the procedures or processes *employed to restore* the Well, or the procedures or processes *employed to redrill* the Well. *See Method*, Webster's Third New International Dictionary,

---

[5] The Petrodome Policy expired January 1, 2016. [Dkt. 57-1 at 2].

Unabridged 1422 (1961; 2002) (defining "method" as "a procedure or process for attaining an object"). Put otherwise, had Choice *redrilled* the Well, Gemini would have only had to reimburse Choice up to the amount that Choice would have incurred had it employed the most prudent and economical methods to *redrill* the Well. Likewise, had Choice *restored* the Well, Gemini would have only had to reimburse Choice up to the amount that Choice would have incurred had it employed the most prudent and economical methods to *restore* the Well.

Now subsection (f) provides that "if restoration or redrill has not commenced" within the 540-day period, "*such* restoration or redrill shall be held covered at terms, rates and conditions to be agreed by [Gemini]." [Dkt. 57-3 at 60] (emphasis added). As used here, the Court understands "such" to mean "previously characterized," synonymous with "aforementioned." *Such*, Webster's Third New International Dictionary, Unabridged 2283 (1961; 2002). "*Such* restoration or redrill" thus refers to the restoration or redrill that has not commenced within the 540-day period—that is, the restoration or redrill that Choice could have unilaterally implemented under subsection (a). Except that under subsection (f), instead of being covered "only for such costs and/or expenses that would have been incurred . . . had the most prudent and economical methods been employed," the restoration or redrill is held covered "at terms, rates and conditions to be agreed by [Gemini]." In theory, the terms and conditions that Gemini agrees to could be that the subsection (a) standard applies. But even if the parties agree that Gemini shall reimburse Choice only for such costs and/or expenses as would have been incurred to restore or redrill the Well had the most prudent and economical methods been employed, Gemini would not get a say in whether it is a redrill or restoration that is implemented and reimbursed.

Thus, if Choice provides that the remediation that it has not commenced—but plans to commence—is a redrill, the redrill shall be held covered at terms, rates, and conditions to be agreed

by the Gemini. Likewise, if Choice provides that it is a restoration, the restoration shall be held

covered at terms, rates, and condition to be agreed by Gemini. But the "terms, rates and conditions"

cannot be that Gemini will not cover something (i.e., a redrill or a restoration) that the Policy says

*shall* be covered.

### 2. Gemini is obligated to negotiate new terms, rates, and conditions, but is not obligated to pre-approve any remedial course of action.

Choice argues that Gemini has an obligation to negotiate what remediation methods will

be covered under Section IB of the policies. On the other hand, Gemini argues that "terms, rates

and conditions to be agreed by [Gemini]" "cannot be interpreted as forcing Gemini to dictate what

Well restoration efforts will be reimbursed." [Dkt. 57 at 14]. Gemini reasons that the Policy

"already contains a schedule of rates with terms and conditions for reimbursement" and that

"[c]oupling the schedule [of rates] with all the terms and conditions of the Choice Policy that

explain the reimbursement nature of the Choice Policy demonstrates that Gemini only concerns

itself with reimbursement once Choice incurs and submits expenses under the Choice Policy."[6] *Id.*

The Policy does not define "terms," "rates," or "conditions." *See* [Dkt. 57-3 at 51–53]. But

the terms are used throughout the Policy to provide the scope of coverage. *See, e.g.*, [Dkt. 57-3 at

43] (providing the "Schedule of Drilling Rates"); [Dkt. 57-3 at 60] ("The Company agrees, subject

to the Combined Single Limit of Liability and the terms and conditions of this Policy, to reimburse

. . . ."). Consistent with the uses of these terms throughout the Policy, the Court interprets "terms,

---

[6] To the extent that Gemini is arguing that it is not required by subsection (f) to agree to new rates because the Policy already includes a schedule of rates, *see* [Dkt. 57 at 14; 73 at 3], Gemini is wrong. True, the Policy already contains a schedule of rates with terms and conditions for reimbursement. *See* [Dkt. 57-3 at 42–44]. But subsection (f) provides that after the 540-day period, the redrill or restoration shall be held covered at terms, rates, and conditions *to be agreed*. The plain language therefore indicates the parties' intent that the schedule of rates included in the Policy no longer apply after the 540-day period. Instead, Gemini is obligated to agree to new rates, within the Policy's limits, to cover the restoration or redrill. Yes, it is possible that given inflation, the rates necessary to cover the redrill or restoration have increased since Gemini issued this schedule of rates in 2015. But that is the risk Gemini took by including this language in the Policy.

rates and conditions to be agreed" as referring to the terms, rates, and conditions of the coverage—not terms, rates, and conditions of the redrill or restoration. Of course, Gemini's discretion is subject to both the omnipresent duty of good faith and fair dealing, and the Policy's decree that the redrill or restoration "*shall* be held covered."

Like under subsection (a), Choice is still free to restore or redrill the Well as it sees fit. But its coverage—that is, Choice's reimbursement—is subject to the terms, rates, and conditions that Gemini agrees to. And as with all reimbursements under Section IB, reimbursement is still limited to the "actual costs and/or expenses *reasonably incurred*" to restore or redrill the Well. [Dkt. 57-3 at 60] (emphasis added).

### 3. The agreement to agree is enforceable.

Although Gemini does not raise this argument in the present Motion, in its Complaint, Gemini seeks declaratory judgment that "to the extent that Subsection IB(f) requires Gemini to agree to hypothetical new terms, rates, and conditions not already stated in the Policy, it is unenforceable." [1:21-CV-00205, Dkt. 1 at 6]. The Court disagrees.

"Agreements to enter into future contracts are enforceable if they contain all material terms." *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013). "When an 'agreement to enter into a future contract already contains all the material terms of the future contract,' courts can determine and enforce the parties' obligations, and concerns about indefiniteness and reasonable certainty do not arise." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 238 (Tex. 2016) (quoting *McCalla*, 416 S.W.3d at 418). "Forfeitures are not favored in Texas, and contracts are construed to avoid them." *Id.* at 239 (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)).

Even though subsection (f) requires that that the parties agree on additional terms, if a court tried to enforce the Policy, it would have all the terms necessary to do so. Subject to the Policy's limit, terms, and conditions, Section IB obligates Gemini to reimburse Choice for the actual costs and/or expenses that it reasonably incurred "to restore or redrill the Well, or any part thereof, which has been lost or otherwise damaged as a result of . . . an Occurrence giving rise to a claim which would be recoverable under Section IA." [Dkt. 57-3 at 60]. This obligation is not diminished by subsection (f)'s condition that the restoration or redrill shall be held covered at terms, rates, and conditions to be agreed. Therefore, the Policy is enforceable. *See McCalla*, 416 S.W.3d at 418 (holding that a contract that implied that the parties contemplated forming an additional contract in the future was enforceable because it contained all the terms necessary for enforcement).

* * *

In sum, Gemini is both right and wrong. True, the Policy's plain language does not obligate Gemini to determine or pre-approve the most prudent and economical method of Well remediation prior to Choice incurring and submitting expenses for reimbursement. But this is in part because the "most prudent and economical" standard no longer applies at this stage. Instead, Gemini must negotiate the terms, rates, and conditions under which the redrill or restoration is held covered. Further, to the extent that Gemini interprets the Policy as allowing Gemini to not cover a redrill if Choice opts for a redrill, Gemini is incorrect.[7]

## C.  Whether Gemini breached the Policy by not negotiating terms, rates, and conditions of a redrill or restoration depends on fact issues.

---

[7] Choice argues extensively in response to the present Motion that Gemini should be estopped from taking a passive role in negotiating what type of remediation is covered under the Policy. According to Choice, Gemini previously took a position on what remediation efforts would be covered; therefore, Choice argues that Gemini has waived any right to not participate in further negotiations. *See, e.g.*, [Dkt. 100 at 2–5]. Because the Court holds that the Policy grants Choice the sole authority to decide whether a redrill or restoration is reimbursed, this issue is moot.

Gemini next asks the Court to dismiss Choice's Section IB breach of contract claim, contending that (1) Choice has not submitted costs or expenses under Section IB, and (2) Gemini has not breached any alleged contractual duty to negotiate terms, rates, and conditions for coverage. [Dkt. 57 at 16]. It is undisputed that Choice has not submitted costs or expenses under Section IB. Instead, Choice alleges that (1) Gemini breached Section IB of the Policy by not negotiating terms, rates, and conditions, and (2) Gemini repudiated the Policy by saying that it would not pay for a redrill.

### 1. Whether Gemini breached its contractual obligation to negotiate with Choice is a fact issue.

"Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Crose v. Humana Ins. Co.*, 823 F.3d 344, 347 (5th Cir. 2016) (internal quotation marks omitted).

As discussed, Gemini has a contractual obligation to negotiate the terms, rates, and conditions under which the redrill or restoration is held covered. Gemini disputes this.[8] [Dkt. 57 at 15]. But Gemini argues that even if the Court finds that Gemini has a duty to negotiate, that Choice's breach of contract claim for failing to negotiate fails because Choice cannot demonstrate proximate cause or how it has been damaged. [Dkt. 57 at 16]. Choice, however, claims that Gemini's breach has caused the Well to remain unrepaired and Choice's gas reserves to remain shut in, resulting in lost natural gas reserve profits. [Dkt. 1-1 at 530]. Choice expects its expert witness to testify at trial "as to the amount Choice has lost in natural gas value from the time of

---

[8] Alternatively, Gemini argues that its "only possible duty under Section IB(f) is to negotiate rates, terms, and conditions for a new insurance policy." [Dkt. 57 at 20]. Nothing in the Policy's language supports this interpretation that negotiations for a *new* policy are required. The Policy still applies. Section IB coverage is simply subject to the terms, rates, and conditions to be agreed by Gemini.

the well control incident in 2015 due to Gemini's failure to cover redrilling of the well." [Dkt. 68-8 at 2].[9] This establishes a genuine issue of material fact on whether Gemini's alleged failure to negotiate has injured Choice. Summary judgment is therefore improper on Choice's breach of contract claim based on Gemini's alleged failure to negotiate.

**2.   Gemini is entitled to summary judgment on Choice's repudiation claim.**

"[T]he repudiation of a contract before the time of performance has arrived amounts to a tender of breach of the entire contract and allows the injured party to immediately pursue an action for damages." *Murray v. Crest Const., Inc.*, 900 S.W.2d 342, 344 (Tex. 1995). To prevail on claim for anticipatory breach in Texas, a plaintiff must establish: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) (citing *Taylor Publ'g. Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)). "Traditionally, 'repudiation occurs when the promissor unequivocally disavows any intention to perform in the future.'" *Sci. Mach. & Welding, Inc. v. FlashParking, Inc.*, 641 S.W.3d 454, 463 (Tex. App.—Austin 2021, pet. denied) (quoting *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 139 (Tex. App—Houston [14th Dist.] 2000, no pet.)). "The intention to abandon the contract at some future date is no breach of it, but, when that intention is declared in positive terms and unconditionally, it has the effect, in so far as the promisor is able to do so, to repudiate

---

[9] Gemini objects to this exhibit. Gemini argues that this is not admissible summary judgment evidence because it is hearsay and Choice's counsel "lacks personal knowledge of the statements contained in the [expert] report and . . . is not an expert." [Dkt. 73 at 3]. "A party may object that the material cited to support or dispute a fact [at the summary judgment stage] cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "In the Fifth Circuit a district court may consider unsworn expert reports if the proponents provide a method for presenting them as admissible evidence." *DeYoung v. Dillon Logistics, Inc.*, No. 6:19-CV-00527, 2021 WL 414536, at *4 (E.D. Tex. Feb. 5, 2021) (Barker, J.) (holding that the plaintiffs "satisfied their burden by proposing that the experts will testify at trial to their reports"). Choice proposes that its experts will testify at trial to their reports, and the Court is satisfied that the expert reports can be presented in an admissible form. Gemini's objection is overruled.

the contract itself and to terminate the contractual relations between the parties." *Moore v. Jenkins*, 211 S.W. 975, 976 (Tex. 1919).

Choice claims that Gemini "affirmatively declared that it would ***not*** cover" a redrill. [Dkt. 68 at 12–13]. To support this claim, Choice provides a letter written to Choice by Gemini Vice President of Technical Risk Strategy and Claim Litigation, Suzanne Roberts. *See* [Dkt. 68-3]. The letter states: "[Gemini's] investigation reveals that the most reasonable and prudent method to restore the Well to its condition immediately prior to the Well going out of control is not a redrill." *Id.* at 1. The letter then erroneously relies on subsection (a) before concluding:

> Therefore, at this time and based on Gemini's investigation, Gemini would potentially owe to reimburse Choice its interest of the cost and expense of a prudent and economical workover operation. If you disagree that workover is the most prudent and economical option to restore the Well, please submit supporting documentation for our review . . . .

*Id.* at 2. Despite Choice's assertion otherwise, this letter is not an affirmative declaration by Gemini that it will not cover a redrill. To the contrary, the letter leaves open the possibility that Gemini would change its position if Choice submitted supporting documentation.[10]

Choice also cites *Gemini I*, where Gemini sought declaratory judgment that its "obligation is limited to a reimbursement or restoration of the Well through a workover, not a redrill," as evidence of repudiation. [Dkt. 68 at 17] (quoting Original Complaint, *Gemini Ins. Co. v. Choice Expl., Inc.*, No. 3:18-CV-01392-X (N.D. Tex. May 31, 2018) [Dkt. 1]). Insurance companies frequently seek declaratory judgments regarding their obligations under insurance policies. Choice does not point to a single case—nor is the Court independently aware of one—holding that an insurer repudiated a policy by exercising its legal right to seek declaratory judgment. But even if

---

[10] While Gemini's request for supporting documentation is based on its flawed interpretation that subsection (a)'s most prudent and economical standard applies (and a flawed interpretation that "methods" refers to redrill or restoration), it nonetheless thwarts a finding that Gemini unconditionally declared that it would not reimburse a redrill.

a request for declaratory judgment could hypothetically constitute a repudiation, it does not here. All that can be gleaned from *Gemini I* is that the parties disagreed on how to interpret the Policy. As a matter of law, Gemini did not unequivocally declare that it intends to abandon its potential future duty to reimburse a redrill by requesting declaratory judgment that it does not have to pay for a redrill.

While Choice repeatedly asserts that Gemini unequivocally expressed that it would not reimburse Choice's proposed redrill, *see, e.g.*, [Dkt. 68 at 8, 11, 17], such assertions do not create a genuine issue of material fact. *See Duffy*, 44 F.3d at 312. Choice provides no evidence that would allow a reasonable jury to find that Gemini repudiated the Policy. Gemini is therefore entitled to summary judgment on Choice's repudiation claim.

### D.  Gemini is entitled to summary judgment on Choice's Section IB bad faith claim.

The insurer's "disproportionately favorable bargaining posture in the claims handling process" gives rise to a special relationship between the insurer and the insured, under which the insurer owes the insured a duty of good faith and fair dealing. *Lyons v. Miller Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 600–01 (Tex. 1993). If the insurer breaches its duty of good faith and fair dealing, the insured may recover under the tort of bad faith. *See id.* To establish an insurer's liability for the tort of bad faith, the insured must prove: "(1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy *and* (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim." *Id.* at 601. "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith," however. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 43 (Tex. 1998).

Gemini argues that Choice's bad faith claims related to Section IB fail because (1) there can be no bad faith claim where there is no breach of the Policy; (2) Choice mistakenly interprets and relied on the moot N.D. Texas Court Order; and (3) Choice cannot demonstrate that Gemini's

interpretation of Section IB was unreasonable to warrant a bad faith claim. [Dkt. 57 at 20]. In response, Choice first argues that Gemini's Motion must be denied because it "makes no effort to address" Choice's repudiation claim. [Dkt. 68 at 26–27]. Because the Court already determined that Choice's repudiation claim fails as a matter of law, the bad faith claim that Choice hung on its repudiation claim must fail too.

Choice also argues that "Gemini's duty of good faith and fair dealing obligates it to negotiate with Choice as to what method of re-entry it intends to cover" and points to Gemini's filing of multiple lawsuits in multiple courts as evidence of bad faith. [Dkt. 74 at 7]. Perhaps Gemini failed to negotiate the terms, rates, and conditions for a redrill or restoration in violation of the Policy—that is for the jury to decide. But even if so, there is no evidence to support that Gemini did so in bad faith, rather than as the result of a bona fide coverage dispute. The court in *Gemini I* held that Gemini's claims were not ripe. *See Gemini Ins. Co.*, 2020 WL 1064844, at * 5. Gemini had every right to bring a second case. The fact that Gemini filed *Gemini II* in a different court than *Gemini I* is not *per se* evidence of bad faith. Gemini is therefore entitled summary judgment on Choice's bad faith claim based on Section IB.

**E.  Gemini is entitled to summary judgment on Choice's Section IB insurance code claims.**

Chapter 541 of the Texas Insurance Code provides insureds with a private right of action against insurance companies for unfair or deceptive acts or practices. It also enumerates the conduct prohibited. *See* Tex. Ins. Code Ann. § 541.060.

Gemini argues that "Choice's statutory Section IB claims under Texas Insurance Code Chapter 541 fail because (1) Choice has not properly submitted claims under Section IB, (2) Choice cannot show a statutory violation, and (3) even if it could, there is no independent injury." [Dkt. 57 at 18–19]. Choice's insurance code claims are based on both Gemini's alleged repudiation and Gemini's alleged refusal to negotiate. [Dkt. 68 at 23–24].  Because the Court already rejected

Choice's repudiation claim, the Court only addresses the claim based on Gemini's alleged refusal to negotiate.

Choice has repeatedly asserted that Gemini's refusal to negotiate with Choice in good faith constitutes a violation of the insurance code. *See* [Dkts. 1-1 at 535; 68 at 24; 74 at 2; 100 at 2 n.1]. But other than these bare assertions, which do not establish a genuine issue of material fact, Choice's briefing on the alleged insurance code violations focuses only on its repudiation allegations. The Court therefore agrees that Choice has not established that it can show an insurance code violation involving Section IB, and grants summary judgment accordingly.

## IV.    CONCLUSION

It is therefore **ORDERED** that Gemini Insurance Company's Second Motion for Partial Summary Judgment [Dkt. 57] is **GRANTED IN PART** and **DENIED IN PART**. It is **DENIED** as to Choice's claim for Section IA expenses under the Petrodome Policy and Choice's breach of contract claim based on Gemini's alleged failure to negotiate terms, rates, and conditions per Section IB of the Policy. It is **GRANTED** as follows:

1. It is **ORDERED** that Gemini does not have an obligation to determine what Well remediation efforts will be reimbursed under Section IB of the Choice Policy prior to Choice incurring the expenses for reimbursement.

2. It is further **ORDERED** that Gemini does not have an obligation to pre-approve any method of Well remediation—sidetrack, workover, or redrill—described in Section IB of the Choice Policy. The Court reiterates, however, that Gemini does not have the *authority* to dictate whether a redrill or a restoration is covered.

3. It is further **ORDERED** that Choice's breach of contract claim based on repudiation is **DISMISSED WITH PREJUDICE**. As previously stated, Choice's breach of contract claim based on Gemini's alleged failure to negotiate terms, rates, and conditions under Section IB remains.

4. It is further **ORDERED** that Choice's common law bad faith claims related to Section IB are **DISMISSED WITH PREJUDICE**.

5.  It is further **ORDERED** that Choice's claims related to Section IB for unfair or deceptive insurance practices under Chapter 541 of the Texas Insurance Code are **DISMISSED WITH PREJUDICE**.

**SIGNED this 2nd day of May, 2023.**


_Michael J. Truncale_
Michael J. Truncale
United States District Judge

21